## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IRA NAPIER,

      Plaintiff,

v.                                                   Case No. 8:13-CV-1577-T-17TBM

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANT AFGE'S MOTIONS TO DISMISS

This matter comes before the Court pursuant to Defendant's, American Federation of Government Employees ("AFGE"), Motion to Dismiss, (Doc. # 12), filed on October 30, 2013, and Plaintiff's, IRA NAPIER ("Plaintiff"), Response, filed November 13, 2013. (Doc. # 14). For the reasons set forth below, the Defendant's motion is **GRANTED in part**.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a Plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." A Defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim on which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." Id. at 555 (second alteration in original) (citation omitted) (internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012). Courts follow a two-pronged approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true. Id. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned [...] accusation." id. (quoting Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)).

## STATEMENT OF FACTS AND BACKGROUND

AFGE is a national union with both public and private employees, and the American Federation of Government Employees, Local 547 ("Local 547") is an AFGE chapter. (Doc. # 6, ¶¶4–5). From approximately 1998 to 2012, Plaintiff, characterized as a "white male," served as the president of Local 547. Id. at ¶3. As president, Plaintiff enjoyed a salary, travel reimbursement, a union office, and other associated benefits. See generally, id. Also, Plaintiff exercised general supervision over the affairs of Local

2

547, and conducted union meetings. Id. On June 19, 2012, AFGE National Vice President Everett Kelly, who Plaintiff characterizes as "black," recommended AFGE place Local 547 in a trusteeship and remove Plaintiff as president of Local 547. Id. at ¶6. AFGE placed Local 547 in trusteeship and appointed Ms. Valyria Lewis as trustee of Local 547; Plaintiff also characterized Ms. Lewis as a "black" official with AFGE. Id. Soon thereafter, all officers and stewards of Local 547 were dismissed, and the letter AFGE authored imposing trusteeship of Local 547 contained allegedly false charges of misconduct against Plaintiff. Id. Plaintiff disputes any nefarious activity, insists the former "black" vice president of Local 547 engaged in the misconduct, yet claims AFGE and Local 547 took no action against the former "black" vice president of Local 547. Id.

After AFGE placed Local 547 in trusteeship, Ms. Lewis caused a fraud alert to be placed on Local 547's bank account. Id. at ¶7. Plaintiff claims Ms. Lewis knew of this fraud alert, yet still allowed checks to issue to Plaintiff, which were ultimately dishonored. Id. at ¶8. Plaintiff further claims AFGE and Local 547 failed to follow notice and procedural requirements regarding the propriety of the trusteeship. Id. at ¶11. Plaintiff alleges AFGE took no investigatory, remedial, or disciplinary actions against either Mr. Kelly, Ms. Lewis, or any employees acting at their behest. Id. at ¶10–11.

On January 25, 2013, AFGE commenced a trial concerning the charges against Plaintiff. Id. at ¶15. Plaintiff alleges AFGE and Local 547 prevented him from obtaining any meaningful discovery, refused to allow a court reporter to be present to make a record of the proceedings, appointed a trial panel of three people, "none of whom were white," appointed a "black" prosecutor, and solely utilized "black" witnesses when "white" witnesses had "more relevant information." Id. at ¶¶16–18. Plaintiff further alleges just

3

prior to the commencement of the trial, a member of the trial panel threatened to forward an unidentified copy of the proceedings to the Department of Labor. Id. During the trial, Ms. Lewis and the prosecutor accused Plaintiff of collecting an unauthorized salary, received unapproved professional insurance benefits, both of which Local 547 paid. Id. After the tribunal and prosecutor suggested Plaintiff committed violations of both state and federal law, the trial was adjourned, the parties met off the record, and Ms. Kelly and the prosecutor allegedly suggested Plaintiff should settle the charges internally within the AFGE and Local 547, so as to avoid any criminal prosecution, and Plaintiff refused. Id.

Leading up to February 6, 2013, Ms. Kelly and other "black" AFGE and Local 547 representatives accused Plaintiff of unauthorized travel reimbursement, improper appointments to leadership positions, and similar criminal conduct. Id. at ¶¶24–27. Just prior to these allegations, Plaintiff filed a complaint with the EEOC on February 4, 2013, titled "Complaint against the AFGE and Local 547 of the AFGE for discrimination based on race and hostile work environment based on race." Id. at ¶70. These allegations continued until a second trusteeship hearing held April 2, 2013, which included a different "black" prosecutor, and deprived Plaintiff of his right to counsel and to present a witness with material testimony to refute the allegations. Id. at ¶¶28–31. In the interim, on March 8, 2013, Plaintiff supplemented his EEOC complaint. Id. at ¶70. Ultimately, AFGE and Local 547 issued an opinion on April 26, 2013, finding Plaintiff guilty of various charges and suggested remedies. Id. at ¶34. Plaintiff appealed the decision, and the appellate body rejected his appeal in late June. Id. Plaintiff then filed a second complaint with the EEOC for retaliation on June 27, 2013, titled "Complaint against the AFGE and Local 547

4

of the AFGE for discrimination based on race or color, hostile work environment based on race or color, retaliation, and hostile work environment based on retaliation." Id.

Plaintiff now brings suit against both AFGE and Local 547 for: discrimination based on race or color (Count I); hostile work environment based on race or color (Count II); retaliation (Count III); hostile work environment based on retaliation (Count IV); and injunctive relief (Count V). See generally, id. AFGE has moved to dismiss the claims for lack of subject matter jurisdiction and failure to state a claim. (Doc. # 12).

## DISCUSSION

### A. Subject Matter Jurisdiction – Exhaustion of Administrative Remedies

#### 1. The Civil Service Reform Act ("CSRA") Does Not Preempt Plaintiff's Causes of Action

AFGE first attacks subject matter jurisdiction through preemption; AFGE argues the CSRA confers sole jurisdiction to the Federal Labor Relations Authority ("FLRA") to regulate certain matters against federal sector unions. (Doc. # 12, pp. 3–6). Plaintiff opposes this argument, and contends the CSRA does not preempt his causes of action because his causes of action are based on employment claims, rather than the distinguished causes of action discussed in Local 547's cited authority. (Doc. # 14). Plaintiff further alleges the argument is meritless because in 2006, a United States District Judge in the Southern District of Mississippi rejected this same argument. id.

The CSRA does not preempt Plaintiff's causes of action. The cases Defendant cited fall short of establishing the proposition that the CSRA preempts all federal causes of action against a federal union. The CSRA preempts federal causes of action resulting from unfair labor practices. Karahalios v. National Federation of Federal Employees, Local 1263, 489 U.S. 527, 533–535 (1989). These cases, however, contemplate the

federal union breaching its duty to represent a union member, which results in an unfair labor practice, rather than when the union commits an adverse employment action against a union member employed as an officer or employee of the union. Cf., Warren v. Local 1759, AFGE, 764 F.2d 1395 (11th Cir. 1985) (suit involving civilian federal employee attempting to invoke federal jurisdiction based on union's duty of fair representation); Johnson v. Principi, 2004 WL 2044258 (N.D. Ill. 2004) (suit involving union discriminating against member in representational affairs); Johnson v. Goper, 2001 WL 1511294 (M.D. Pa. 2001) (suit involving union discriminating in representing the interests of union employees). Defendants have not provided any authority for their proposed expansion of preemption under the CSRA, while Plaintiff has provided authority expressly restricting preemption under the CSRA. See Wilson v. Harvey, 156 Fed.Appx. 55, 57 (10th Cir. 2005) (holding CSRA, 5 U.S.C. § 2302(d)(1) does not preempt Title VII with respect to federal employees and affords jurisdiction to district courts). This Court, relying on Plaintiff's authorities, finds the CSRA does not preempt Plaintiff's causes of action, and maintains jurisdiction over the present case.

### 2. Plaintiff's Alleged Deficient Exhaustion of Administrative Remedies for Color-based Discrimination

AFGE next argues Plaintiff's failure to specifically "check the box" for color as opposed to race in his EEOC complaints precludes Plaintiff from now bringing an action for discrimination based on the color of his skin, due to his failure to exhaust administrative remedies. (Doc. # 12, pp.7–8). AFGE argues this should result in dismissal of Counts I and II of Plaintiff's First Amended Complaint. Id. Plaintiff opposes this argument, and contends the nature of color- and race-based discrimination overlaps, and this indiscrete nebulous provides an exception for Plaintiff's procedural posture. (Doc. # 14).

Plaintiff did not properly exhaust his administrative remedies with respect to color-based discrimination. Plaintiff contends with respect to the EEOC Compliance Manual and "various cases," race and color overlap, but are not necessarily synonymous. (Doc. # 11, n.2). Plaintiff indeed cites one case from the Eastern District of Tennessee, wherein that court analyzed whether color and race were synonymous for the purposes of a Title VII claim. Atkins v. Denso Manufacturing of Tennessee, Inc., 2011 WL 5023392 (E.D. Tenn. 2011). In that case, the court clearly demonstrated the contrast between color- and race-based claims of discrimination and retaliation—a color-based claim of discrimination "'arises when the particular hue of the plaintiff's skin is the cause of the discrimination,' such as in the case where a dark-color African-American individual is discriminated against in favor of a light-color African-American individual. 2011 WL 5023392 at *10 (citing Campbell v. Hamilton County, 23 Fed.Appx. 318 (6th Cir. 2001) (quoting Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 n. 5 (4th Cir. 2002)). In his response to Local 547's Motion to Dismiss, Plaintiff concedes this case is "likely…more a 'race' than a 'color' case." (Doc. # 11).

Nowhere in his EEOC complaints did Plaintiff discuss a claim based on the pigmentation, complexion, hue, shade, or tone of his skin. In fact, in the February 4, 2013, EEOC complaint, Plaintiff did not reference the term "color" or any equivalent for the basis of the discrimination; however, he used the term "race" or "racial" at least six (6) times, and always framed the issue as a "black" individual discriminating against Plaintiff for being "white," or a "black" individual not to pursuing similar accusations against "black" employees. (Doc. # 11-1). Further, in his March 8, 2013, supplement, Plaintiff did not reference the term "color" or any derivation thereof; however, he used the term "race" or

"racial" at least nine (9) times, and always framed the issue as a "black" or "white." (Doc. # 11-2). Finally, in his June 27, 2013, EEOC complaint, Plaintiff, for the first time, began referencing both color- and race-based discrimination, despite acknowledging that the February 4, 2013, EEOC complaint solely referenced race-based discrimination. (Doc. # 11-3). Although he acknowledged the basis for the prior EEOC complaint, Plaintiff failed to conclusively state any basis for the sudden addition of color-based discrimination. Id. For these reasons, Plaintiff failed to sufficiently notify the EEOC of, and administratively exhaust, his color-based claim, and the color-based discrimination in Counts I and II is stricken; however, Counts I and II still survive for race-based discrimination.

### 3. Plaintiff's Allegedly Broadly-Charged Causes of Action Were Sufficiently Charged Administratively

AFGE next attacks subject matter jurisdiction based on the stark difference between: 1) the periods of time and activity disclosed to the EEOC; and 2) the periods of time and activity contained in the Amended Complaint. (Doc. # 12). AFGE argues this elaboration and expansion of the causes of action is precluded due to Plaintiff's failure to disclose same to the EEOC and exhaust his administrative remedies thereby. Id. AFGE objects to Plaintiff including paragraphs 24–50 of his Amended Complaint into any race discrimination and harassment charges, as well as including paragraphs 1–50 into his retaliation claim, which all occurred before April 26, 2013. Id. Plaintiff opposes this argument, and contends every fact and issue pled in the Amended Complaint was derived from the EEOC complaints. (Doc. # 14).

Plaintiff sufficiently exhausted his administrative remedies with respect to his race discrimination and harassment charges. While it is true Plaintiff incorporates behavior after the February 4, 2013, EEOC complaint, Plaintiff supplemented that complaint on

March 8, 2013, (Docs. ## 11-2, 11-9), and further alleged the discriminatory and retaliatory behavior in his June 27, 2013, EEOC complaint.  The entire purpose for exhausting administrative remedies is to make "a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her. Wade, 796 F.2d at 1376; Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999). This allows the agency "every opportunity to investigate and resolve the dispute[,] all that is intended by the exhaustion requirement." Wade, 796 F.2d at 1378.  This Court is less concerned with which box Plaintiff checked, and more concerned with the allegations contained in the complaints and notice to the EEOC.  Plaintiff's Amended Complaint does not elaborate beyond the facts contained within the two EEOC complaints and the EEOC supplement, and all of these documents alleged forms of race discrimination and hostile work environment.   (Docs. ## 11-2 through 11-5).   The contention that an EEOC investigator's failure to specifically check a box removes any notice to the Defendants is unpersuasive—the information and allegations were readily available to the Defendants. Id.  Therefore, this Court finds Plaintiff complied with the requirements of administrative exhaustion.

### 4. AFGE is a Labor Organization Pursuant to Title VII of the CRA

AFGE finally argues it is not considered a labor organization.  (Doc. # 12).  AFGE asserts it cannot meet the definition for labor organization because: 1) Plaintiff was not an employee of AFGE; 2) Plaintiff's employer is not a statutory employer; and 3) AFGE does not engage in industry affecting commerce. Id.  Plaintiff disputes these arguments, and contends courts have consistently held unions like AFGE meet the statutory definition for labor organization.  The Court agrees with Plaintiff.  AFGE is undoubtedly a union that

represents federal employees, and both the Fourth and Eighth Circuit Courts of Appeal

have found that representation ample to fall within the labor organization under Title VII.

Jones v. American Postal Workers Union, 192 F.3d 417 (4th Cir. 1999); Jennings v.

American Postal Workers Union, 672 F.2d 712 (8th Cir. 1982); see also Cogburn v.

American Federation of Government Employees, 2006 WL 2884505 *1 (rejecting

argument that AFGE is not a labor organization based on interpretation of the statutory

definition of "labor organization" and "industry affecting commerce").

### B. Adequacy of Plaintiff's Claims as Pled in the Amended Complaint

#### 1. AFGE is an Employer and Shares a Contractual Relationship with Plaintiff

AFGE first argues Plaintiff is only a member of AFGE, rather than an employee,

and therefore Plaintiff cannot maintain an action based on an employer-employee

relationship. (Doc. # 12). AFGE alleges it has never made any contributions to Plaintiff's

social security, unemployment insurance, workers' compensation, health insurance, or

pension. Id. Plaintiff asserts AFGE could be considered Plaintiff's employer based on

AFGE highly integrating into and controlling Local 547's operations via the trusteeship.

(Doc. # 14). Plaintiff also alleges if the Court determines AFGE was not literally an

employer, Plaintiff could still maintain an action based on agency theory. Id.

In denying Local 547's motion to dismiss on the issue of threshold number of

employees, the Court opined that it could consider the combination of AFGE and Local

547 employees and, therefore, the actions of both AFGE and Local 547—namely, AFGE

placing Local 547 in a trusteeship and AFGE employees conducting the trial against

Plaintiff. The Eleventh Circuit Court of Appeals has construed the term "employer"

liberally to include parent companies and parties that control subsidiaries or other entities.

10

Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291 (11th Cir. 1988) (quoting Sibley Memorial Hospital v. Wilson, 488 F.2d 1338, 1341 (D.C. Cir. 1973)); Pardazi v. Cullman Medical Center, 838 F.2d 1155 (11th Cir. 1988). While international unions can be distinct legal entities, Coble v. Howard University, 960 F.Supp. 1, 4 (D.C.C. 1997), and a parent's constructive knowledge of a local union's impermissible activity does not necessarily impose a legal duty on the parent, Moore v. IBEW, Local Union 569, 989 F.3d 1534 (9th Cir. 1993), the present circumstances are different. Therefore, as Plaintiff has pled his Amended Complaint to include allegations that AFGE exercised control over Local 547, and thereby affected Plaintiff's relationship with Local 547, this Court must construe the facts in a light most favorable to Plaintiff, and deny AFGE's motion to dismiss based on a lack of an employer-employee relationship.

### 2. Plaintiff States a Claim for Non-Employment Discrimination

AFGE next argues Plaintiff is an elected official, rather than an employee, of Local 547, and therefore cannot assert any property or contractual right under 42 U.S.C. § 1981. (Doc. # 12). AFGE suggests the Court should apply the "elected official" exemption to every elected position in an organization. AFGE cites generally a 1900 Supreme Court case discussing elected officials and the lack of property rights associated with those positions. Taylor and Marshall v. Beckham, 178 U.S. 548, 577 (1900). AFGE also cites generally a Second Circuit Court of Appeals opinion regarding a publicly-elected official serving in his capacity as the chancellor of a school district. Velez v. Levy, 401 F.3d 75, 75 (2d Cir. 2005). AFGE provides no authority to suggest this exemption extends beyond officials holding public office—national, state, and local representatives, chancellors, or similar politicians—and generally alleges Plaintiff has no contractual relationship with, or

property right to his position with, AFGE or Local 547. Similar to the Court's denial of

Local 547's arguments in its motion to dismiss, these arguments are entirely meritless

and the Court declines further discussion.

### 3. Plaintiff States a Claim for Hostile Work Environment

AFGE finally argues Counts II and IV insufficiently state a claim. (Doc. # 12).

AFGE attempts to trivialize Plaintiff's alleged hostile work environment to issues solely

involving "offensive jokes, slurs, physical assaults or threats, ridicule or mockery, insults

or put-downs, or offensive objects or pictures." Id. at p.15–16. AFGE correctly cites

Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999), for this proposition, and even

includes the "not limited to" language preceding the non-exhaustive list, but then urges

the Court to dismiss Counts II and IV because Plaintiff's allegations do not fall within this

non-exhaustive list. As Plaintiff correctly points out over the span of two pages, a hostile

work environment could plausibly arise from the following:

1. The alleged improper charging and removal of Plaintiff as president of Local 547 at the disciplinary trial and the two trusteeship hearings;
2. The allegedly improper conduct which occurred during the disciplinary trial and the two trusteeship hearing proceedings;
3. Defendant allegedly holding a hearing on charges against Plaintiff without giving Plaintiff notice of the hearing;
4. Defendant allegedly seizing and then withholding exculpatory union documents Plaintiff needed for trial;
5. The alleged improper removal of Plaintiff from office and the alleged banning of Plaintiff from office for life;
6. Allegedly targeting Plaintiff for baseless charges;
7. Allegedly treating Plaintiff as a criminal;
8. Allegedly seeking criminal charges against Plaintiff;
9. Alleged repeated threats of prosecution;
10. Alleged repeated stigmatizing statements against Plaintiff at union meetings;
11. Alleged repeated efforts to extort Plaintiff to settle false charges;

12. Alleged stigmatizing notices to Local 547's bank about Plaintiff;
13. Allegedly dishonoring a legitimate check to Plaintiff; and
14. Allegedly refusing to pay Plaintiff's appropriate union-related expenses.

(Doc. # 14) (referencing (Doc. # 11)). This non-exhaustive list Plaintiff generously provided to the Court more than satisfies the pleading requirement for a hostile work environment at the dismissal stage. AFGE continues with an assertion that Plaintiff failed to allege the harassment was completely unrelated to his race or protected activity. (Doc. # 12). This argument is meritless; Plaintiff alleged throughout his Amended Complaint that these actions were based on race and protected activity. (Doc. # 6). Finally, AFGE urges the Court to find that the harassment Plaintiff encountered was "neither severe nor pervasive." (Doc. # 12). This argument is meritless. This determination contains both a subjective and objective component. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010). Analyzed in the light most favorable to the non-moving party, by filing his EEOC complaints, and alleging same in the Amended Complaint, Plaintiff clearly demonstrated a subjective perception that the harassment was so severe and pervasive so as to alter the terms or conditions of his employment. Turning to whether this belief was objectively reasonable, a court should consider the allegedly discriminatory conduct's "frequency; its severity; whether it is physically threatening or humiliating [...] and whether it unreasonably interferes with an employee's work performance." Id. at 808–809. While this consideration is typically undertaken at summary judgment, accepting as true and construing the facts in the light most favorable to the non-moving party, AFGE's treatment of Plaintiff easily rises to the level severe and pervasive—among other actions, through Local 547, AFGE: cast Plaintiff as a criminal; denied Plaintiff

13

Case No. 8:13-CV-1577-T-17TBM

meaningful discovery to defend against criminal allegations; dishonored Plaintiff's checks; stigmatized Plaintiff's reputation to a local bank; and removed Plaintiff from his elected office.  (Doc. # 14) (referencing (Doc. # 11)).

Accordingly, it is **ORDERED** that:

1.  Plaintiff's causes of action for color-based discrimination and hostile work environment are **DISMISSED** for failure to exhaust administrative remedies;

2.  The remainder of Defendant's Motion to Dismiss Plaintiff's Amended Complaint is **DENIED**.

3.  The Defendant is **ORDERED** to reply to the Plaintiff's Amended Complaint within fifteen (15) days of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this _____ day of September, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:    All Counsel and Parties of Record