UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IRA NAPIER,

      Plaintiff,

v.                                Case No. 8:13-CV-1577-T-17TBM

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANT LOCAL 547'S MOTIONS TO DISMISS

This matter comes before the Court pursuant to Defendant's, American Federation of Government Employees, AFL-CIO Local 547 ("Local 457"), Motion to Dismiss, (Doc. # 8), filed on October 10, 2013, and Plaintiff's, IRA NAPIER ("Plaintiff"), Response. (Doc. # 11). For the reasons set forth below, the Defendant's motion is **GRANTED in part**.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a Plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." A Defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim on which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." Id. at 555 (second alteration in original) (citation omitted) (internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012). Courts follow a two-pronged approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true. Id. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned [...] accusation." Id. (quoting Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)).

## STATEMENT OF FACTS AND BACKGROUND

The American Federation of Government Employees ("AFGE") is a national union with both public and private employees, and Local 547 is an AFGE chapter. (Doc. # 6, ¶¶4–5). From approximately 1998 to 2012, Plaintiff, characterized as a "white male," served as the president of Local 547. Id. at ¶3. As president, Plaintiff enjoyed a salary, travel reimbursement, a union office, and other associated benefits. See generally, id. Also, Plaintiff exercised general supervision over the affairs of Local 547, and conducted

2

union meetings. Id. On June 19, 2012, AFGE National Vice President Everett Kelly, who Plaintiff characterizes as "black," recommended AFGE place Local 547 in a trusteeship and remove Plaintiff as president of Local 547. Id. at ¶6. AFGE placed Local 547 in trusteeship and appointed Ms. Valyria Lewis as trustee of Local 547; Plaintiff also characterized Ms. Lewis as a "black" official with AFGE. Id. Soon thereafter, all officers and stewards of Local 547 were dismissed, and the letter AFGE authored imposing trusteeship of Local 547 contained allegedly false charges of misconduct against Plaintiff. Id. Plaintiff disputes any nefarious activity, insists the former "black" vice president of Local 547 engaged in the misconduct, yet claims AFGE and Local 547 took no action against the former "black" vice president of Local 547. Id.

After AFGE placed Local 547 in trusteeship, Ms. Lewis caused a fraud alert to be placed on Local 547's bank account. Id. at ¶7. Plaintiff claims Ms. Lewis knew of this fraud alert, yet still allowed checks to issue to Plaintiff, which were ultimately dishonored. Id. at ¶8. Plaintiff further claims AFGE and Local 547 failed to follow notice and procedural requirements regarding the propriety of the trusteeship. Id. at ¶11. Plaintiff alleges AFGE took no investigatory, remedial, or disciplinary actions against either Mr. Kelly, Ms. Lewis, or any employees acting at their behest. Id. at ¶10–11.

On January 25, 2013, AFGE commenced a trial concerning the charges against Plaintiff. id. at ¶15. Plaintiff alleges AFGE and Local 547 prevented him from obtaining any meaningful discovery, refused to allow a court reporter to be present to make a record of the proceedings, appointed a trial panel of three people, "none of whom were white," appointed a "black" prosecutor, and solely utilized "black" witnesses when "white" witnesses had "more relevant information." id. at ¶¶16–18. Plaintiff further alleges just

3

prior to the commencement of the trial, a member of the trial panel threatened to forward an unidentified copy of the proceedings to the Department of Labor. Id. During the trial, Ms. Lewis and the prosecutor accused Plaintiff of collecting an unauthorized salary, received unapproved professional insurance benefits, both of which Local 547 paid. Id. After the tribunal and prosecutor suggested Plaintiff committed violations of both state and federal law, the trial was adjourned, the parties met off the record, and Ms. Kelly and the prosecutor allegedly suggested Plaintiff should settle the charges internally within the AFGE and Local 547, so as to avoid any criminal prosecution, and Plaintiff refused. Id.

Leading up to February 6, 2013, Ms. Kelly and other "black" AFGE and Local 547 representatives accused Plaintiff of unauthorized travel reimbursement, improper appointments to leadership positions, and similar criminal conduct. Id. at ¶¶24–27. Just prior to these allegations, Plaintiff filed a complaint with the EEOC on February 4, 2013, titled "Complaint against the AFGE and Local 547 of the AFGE for discrimination based on race and hostile work environment based on race." Id. at ¶70. These allegations continued until a second trusteeship hearing held April 2, 2013, which included a different "black" prosecutor, and deprived Plaintiff of his right to counsel and to present a witness with material testimony to refute the allegations. Id. at ¶¶28–31. In the interim, on March 8, 2013, Plaintiff supplemented his EEOC complaint. Id. at ¶70. Ultimately, AFGE and Local 547 issued an opinion on April 26, 2013, finding Plaintiff guilty of various charges and suggested remedies. id. at ¶34. Plaintiff appealed the decision, and the appellate body rejected his appeal in late June. Id. Plaintiff then filed a second complaint with the EEOC for retaliation on June 27, 2013, titled "Complaint against the AFGE and Local 547

4

of the AFGE for discrimination based on race or color, hostile work environment based on race or color, retaliation, and hostile work environment based on retaliation." Id.

Plaintiff now brings suit against both AFGE and Local 547 for: discrimination based on race or color (Count I); hostile work environment based on race or color (Count II); retaliation (Count III); hostile work environment based on retaliation (Count IV); and injunctive relief (Count V). See generally, id. Local 547 has moved to dismiss the claims for lack of subject matter jurisdiction and failure to state a claim.  (Doc. # 8).

## DISCUSSION

### A. Subject Matter Jurisdiction – Exhaustion of Administrative Remedies

#### 1. Plaintiff's Alleged Failure to Name Local 547 in the EEOC Complaints

Local 547 first moves to dismiss Plaintiff's Complaint for failing to exhaust his administrative remedies.  (Doc. # 8, p.6).  Local 547 argues Plaintiff failed to name Local 547 in either his February or July Equal Employment Opportunity Commission ("EEOC") complaints, and failed to notice or serve Local 547 with these complaints. Id. at 9.  Plaintiff opposes this contention, and describes in great detail the efforts and lengths he went to exhaust all available administrative remedies.  (Doc. # 11, pp.8–11).

Plaintiff complied with the administrative exhaustion requirement.  The purpose of the administrative exhaustion requirement is to provide the EEOC the information necessary to investigate and resolve disputes between an employee and employer. Wade v. Secretary of Army, 796 F.2d 1369, 1377 (11th Cir. 1986).  This process simply requires the employee to cooperate and provide, in good faith, all relevant, available information for the claim.  Id. (citing Mangiapane v. Adams, 661 F.2d 1388, 1390–1391

5

Case No. 8:13-CV-1577-T-17TBM

(D.C. Cir. 1981) (holding that the agency should play a major role in developing the record)). On February 4, 2013, Plaintiff filed an EEOC complaint with the following subject

> Complaint against the AFGE and Local 547 of the AFGE for discrimination based on race and hostile work environment based on race.

(Doc. # 11-1) (emphasis added).   In that EEOC complaint, Plaintiff described the relationship between AFGE and Local 547; Plaintiff's position and financial arrangement with Local 547; and Plaintiffs complaints against both AFGE and Local 547 conduct for racially-based discrimination and the hostile work environment created therefrom.  Id. Based on the complaints in the February 4, 2013, letter, the EEOC instructed Plaintiff to fill out a charge of discrimination based on race.  (Docs. ## 11-5, 11-9).  On March 8, 2013, Plaintiff sent a supplement to the EEOC with the following subject title:

> Supplement to Complaint against the AFGE and Local 547 of the AFGE for discrimination based on race and hostile work environment based on race.

(Doc. # 11-2) (emphasis added).  In that supplement, Plaintiff recounts the February 4, 2013, EEOC complaint, the parties complained of, and the procedural posture.  Id.  The supplement describes further conduct Plaintiff deemed discriminatory and the hostility created therefrom, both national AFGE and Local 547 members allegedly created.  Id.

On June 27, 2013, Plaintiff filed a second EEOC complaint with the following subject title:

> Complaint against the AFGE and Local 547 of the AFGE for discrimination based on race or color, hostile work environment based on race or color, retaliation, and hostile work environment based on retaliation.

(Doc. # 11-3) (emphasis added).  In that EEOC complaint, Plaintiff recounted the earlier February 4, 2013, complaint, and further actions Plaintiff deemed retaliatory based on the

allegations contained in the February 4, 2013, complaint. Id. Based on the complaints in the June 27, 2013, letter, the EEOC instructed Plaintiff to fill out a charge of discrimination based on race. (Docs. ## 11-6, 11-9).

These documents clearly demonstrate Plaintiff presented factual allegations to the EEOC with respect to both AFGE and Local 547. (Docs. ## 11-1 through 11-9). Further, the allegations contained in these documents clearly demonstrate Plaintiff's compliance with the good faith requirement to provide the EEOC with all relevant and available information. Wade, 796 F.2d at 1369; Mangiapane, 661 F.2d at 1390–1391. Further, a plaintiff may bring a Title VII claim against unnamed parties in an EEOC charge when equity requires, such as when those unnamed parties are "sufficiently implicated in the discrimination alleged in [a plaintiff's] original charges to have reasonable triggered an EEOC investigation of the part. Jackson v. Seaboard Coast Line Railroad Company, 678 F.2d 992 (11th Cir. 1982) (citing Terrell v. U.S. Pipe & Foundry Co., 644 F.2d 1112 (5th Cir. 1981)). Therefore, as a matter of law, to exhaust his administrative remedies, Plaintiff need not specifically name Local 547, and that omission, either by Plaintiff or the EEOC, does not rob this Court of subject matter jurisdiction.

### 2. Plaintiff's Alleged Deficient Exhaustion of Administrative Remedies for Color-based Discrimination

Local 547 next argues Plaintiff's failure to specifically "check the box" for color as opposed to race in his EEOC complaints precludes Plaintiff from now bringing an action for discrimination based on the color of his skin, due to his failure to exhaust administrative remedies. (Doc. # 8, pp.8–9). Local 547 argues this should result in dismissal of Counts I and II of Plaintiff's First Amended Complaint. Id. Plaintiff opposes this argument, and

7

contends the nature of color- and race-based discrimination overlaps, and this indiscrete nebulous provides an exception for Plaintiff's procedural posture. (Doc. # 11).

Plaintiff did not properly exhaust his administrative remedies with respect to color-based discrimination.  Plaintiff contends with respect to the EEOC Compliance Manual and "various cases," race and color overlap, but are not necessarily synonymous. (Doc. # 11, n.2).  Plaintiff indeed cites one case from the Eastern District of Tennessee, wherein that court analyzed whether color and race were synonymous for the purposes of a Title VII claim.  Atkins v. Denso Manufacturing of Tennessee, Inc., 2011 WL 5023392 (E.D. Tenn. 2011).  In that case, the court clearly demonstrated the contrast between color- and race-based claims of discrimination and retaliation—a color-based claim of discrimination "'arises when the particular hue of the plaintiff's skin is the cause of the discrimination,' such as in the case where a dark-color African-American individual is discriminated against in favor of a light-color African-American individual.  2011 WL 5023392 at *10 (citing Campbell v. Hamilton County, 23 Fed.Appx. 318 (6th Cir. 2001) (quoting Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 132 n. 5 (4th Cir. 2002)). Plaintiff concedes this case is "likely…more a 'race' than a 'color' case." (Doc. # 11).

Nowhere in his EEOC complaints did Plaintiff discuss a claim based on the pigmentation, complexion, hue, shade, or tone of his skin.  In fact, in the February 4, 2013, EEOC complaint, Plaintiff did not reference the term "color" or any equivalent for the basis of the discrimination; however, he used the term "race" or "racial" at least six (6) times, and always framed the issue as a "black" individual discriminating against Plaintiff for being "white," or a "black" individual not to pursuing similar accusations against "black" employees. (Doc. # 11-1).  Further, in his March 8, 2013, supplement, Plaintiff did not

8

reference the term "color" or any derivation thereof; however, he used the term "race" or
"racial" at least nine (9) times, and always framed the issue as a "black" or "white." (Doc.
# 11-2). Finally, in his June 27, 2013, EEOC complaint, Plaintiff, for the first time, began
referencing both color- and race-based discrimination, despite acknowledging that the
February 4, 2013, EEOC complaint solely referenced race-based discrimination. (Doc. #
11-3). Although he acknowledged the basis for the prior EEOC complaint, Plaintiff failed
to conclusively state any basis for the sudden addition of color-based discrimination. Id.
For these reasons, Plaintiff failed to sufficiently notify the EEOC of, and administratively
exhaust, his color-based claim, and the color-based discrimination in Counts I and II is
stricken; however, Counts I and II still survive for race-based discrimination.

### 3. The Civil Service Reform Act ("CSRA") Does Not Preempt Plaintiff's Causes of Action

Local 547 next attacks subject matter jurisdiction through preemption; Local 547
argues the CSRA confers sole jurisdiction to the Federal Labor Relations Authority
("FLRA") to regulate certain matters against federal sector unions. (Doc. # 8, pp. 9–11).
Plaintiff opposes this argument, and contends the CSRA does not preempt his causes of
action because his causes of action are based on employment claims, rather than the
distinguished causes of action discussed in Local 547's cited authority. (Doc. # 11).
Plaintiff further alleges the argument is meritless because in 2006, a United States District
Judge in the Southern District of Mississippi rejected this same argument. Id.

The CSRA does not preempt Plaintiff's causes of action. The cases Defendant
cited fall short of establishing the proposition that the CSRA preempts all federal causes
of action against a federal union. The CSRA preempts federal causes of action resulting
from unfair labor practices. Karahalios v. National Federation of Federal Employees,

9

Local 1263, 489 U.S. 527, 533–535 (1989).  These cases, however, contemplate the

federal union breaching its duty to represent a union member, which results in an unfair

labor practice, rather than when the union commits an adverse employment action

against a union member employed as an officer or employee of the union.  Cf., Warren v.

Local 1759, AFGE, 764 F.2d 1395 (11th Cir. 1985) (suit involving civilian federal

employee attempting to invoke federal jurisdiction based on union's duty of fair

representation); Johnson v. Principi, 2004 WL 2044258 (N.D. Ill. 2004) (suit involving

union discriminating against member in representational affairs); Johnson v. Goper, 2001

WL 1511294 (M.D. Pa. 2001) (suit involving union discriminating in representing the

interests of union employees).  Defendants have not provided any authority for their

proposed expansion of preemption under the CSRA, while Plaintiff has provided authority

expressly restricting preemption under the CSRA. See Wilson v. Harvey, 156 Fed.Appx.

55, 57 (10th Cir. 2005) (holding CSRA, 5 U.S.C. § 2302(d)(1) does not preempt Title VII

with respect to federal employees and affords jurisdiction to district courts).  This Court,

relying on Plaintiff's authorities, finds the CSRA does not preempt Plaintiff's causes of

action, and maintains jurisdiction over the present case.

### 4. Plaintiff's Allegedly Broadly-Charged Causes of Action Were Sufficiently Charged Administratively

Local 547 finally attacks subject matter jurisdiction based on the stark difference

between: 1) the periods of time and activity disclosed to the EEOC; and 2) the periods of

time and activity contained in the Amended Complaint.  (Doc. # 8).  Local 547 argues this

elaboration and expansion of the causes of action is precluded due to Plaintiff's failure to

disclose same to the EEOC and exhaust his administrative remedies thereby.  Id.  Local

547 objects to Plaintiff including paragraphs 24–50 of his Amended Complaint into any

race discrimination and harassment charges, as well as including paragraphs 1–50 into his retaliation claim, which all occurred before April 26, 2013. Id. Plaintiff opposes this argument, and contends every fact and issue pled in the Amended Complaint was derived from the EEOC complaints. (Doc. # 11).

Plaintiff sufficiently exhausted his administrative remedies with respect to his race discrimination and harassment charges. While it is true Plaintiff incorporates behavior after the February 4, 2013, EEOC complaint, Plaintiff supplemented that complaint on March 8, 2013, (Docs. ## 11-2, 11-9), and further alleged the discriminatory and retaliatory behavior in his June 27, 2013, EEOC complaint. The entire purpose for exhausting administrative remedies is to make "a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her. Wade, 796 F.2d at 1376; Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999). This allows the agency "every opportunity to investigate and resolve the dispute[,] all that is intended by the exhaustion requirement." Wade, 796 F.2d at 1378. This Court is less concerned with which box Plaintiff checked, and more concerned with the allegations contained in the complaints and notice to the EEOC. Plaintiff's Amended Complaint does not elaborate beyond the facts contained within the two EEOC complaints and the EEOC supplement, and all of these documents alleged forms of race discrimination and hostile work environment. (Docs. ## 11-2 through 11-5). The contention that an EEOC investigator's failure to specifically check a box removes any notice to the Defendants is unpersuasive—the information and allegations were readily available to the Defendants. Id. Therefore, this Court finds Plaintiff complied with the requirements of administrative exhaustion.

## B. Adequacy of Plaintiff's Claims as Pled in the Amended Complaint

### 1. Local 547 is an Employer

Local 547 first argues it does not meet the Title VII statutory definition for
"employer," as Local 547 and AFGE are separate legal entities, and the Court cannot
consider the combination of AFGE and Local 547 employees to satisfy the 15-employee
prerequisite. (Doc. # 8). Plaintiff concedes Local 547 does not employ 15 individuals,
but contends the Court may consider the combination of AFGE and Local 547 employees
given the totality of the circumstances—namely, AFGE placing Local 547 in a trusteeship
and AFGE employees conducting the trial against Plaintiff. (Doc. # 11). However, the
Court need not address this issue, as "the threshold number of employees for application
of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Arbaugh
v. Y&H Corporation, 546 U.S. 500, 516 (2006). Therefore, while not waived, this issue is
not ripe at the dismissal stage, and is appropriately raised at summary judgment. As
Plaintiff suggests, there are alternative bases upon which an otherwise unqualified
employer could come within the scope of Title VII employers, and Plaintiff is entitled to
conduct discovery to explore those bases as an element of his claims.

### 2. The "Elected Official" Argument Lacks Merit

Local 547 next argues Plaintiff is an elected official, rather than an employee, of
Local 547, and therefore cannot assert any property or contractual right under 42 U.S.C.
§ 1981. (Doc. # 8). Local 547 suggests the Court should apply the "elected official"
exemption to every elected position in an organization. Local 547 cites generally a 1900
Supreme Court case discussing elected officials and the lack of property rights associated
with those positions. Taylor and Marshall v. Beckham, 178 U.S. 548, 577 (1900). Local

547 also cites generally a Second Circuit Court of Appeals opinion regarding a publicly-elected official serving in his capacity as the chancellor of a school district. Velez v. Levy, 401 F.3d 75, 75 (2d Cir. 2005). Local 547 provides no authority to suggest this exemption extends beyond officials holding public office—national, state, and local representatives, chancellors, or similar politicians—and generally alleges Plaintiff has no contractual relationship with, or property right to his position with, Local 547. These arguments are entirely meritless and the Court declines further discussion.

### 3. Plaintiff States a Claim for Hostile Work Environment

Local 547 finally argues Counts II and IV insufficiently state a claim. (Doc. # 8). Local 547 attempts to trivialize Plaintiff's alleged hostile work environment to issues solely involving "offensive jokes, slurs, physical assaults or threats, ridicule or mockery, insults or put-downs, or offensive objects or pictures." id. at p.15–16. Local 547 correctly cites Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999), for this proposition, and even includes the "not limited to" language preceding the non-exhaustive list, but then urges the Court to dismiss Counts II and IV because Plaintiff's allegations do not fall within this non-exhaustive list. As Plaintiff correctly points out over the span of two pages, a hostile work environment could plausibly arise from the following:

1. The alleged improper charging and removal of Plaintiff as president of Local 547 at the disciplinary trial and the two trusteeship hearings;
2. The allegedly improper conduct which occurred during the disciplinary trial and the two trusteeship hearing proceedings;
3. Defendant allegedly holding a hearing on charges against Plaintiff without giving Plaintiff notice of the hearing;
4. Defendant allegedly seizing and then withholding exculpatory union documents Plaintiff needed for trial;
5. The alleged improper removal of Plaintiff from office and the alleged banning of Plaintiff from office for life;

13

6.   Allegedly targeting Plaintiff for baseless charges;
7.   Allegedly treating Plaintiff as a criminal;
8.   Allegedly seeking criminal charges against Plaintiff;
9.   Alleged repeated threats of prosecution;
10.  Alleged repeated stigmatizing statements against Plaintiff at union meetings;
11.  Alleged repeated efforts to extort Plaintiff to settle false charges;
12.  Alleged stigmatizing notices to Local 547's bank about Plaintiff;
13.  Allegedly dishonoring a legitimate check to Plaintiff; and
14.  Allegedly refusing to pay Plaintiff's appropriate union-related expenses.

(Doc. # 11).  This non-exhaustive list Plaintiff generously provided to the Court more than satisfies the pleading requirement for a hostile work environment at the dismissal stage. Local 547 continues with an assertion that Plaintiff failed to allege the harassment was completely unrelated to his race or protected activity.  (Doc. # 8).  This argument is meritless; Plaintiff alleged throughout his Amended Complaint that these actions were based on race and protected activity.  (Doc. # 6).  Finally, Local 547 urges the Court to find that the harassment Plaintiff encountered was "neither severe nor pervasive."  (Doc. # 8).  This argument is meritless.  This determination contains both a subjective and objective component. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010).  Analyzed in the light most favorable to the non-moving party, by filing his EEOC complaints, and alleging same in the Amended Complaint, Plaintiff clearly demonstrated a subjective perception that the harassment was so severe and pervasive so as to alter the terms or conditions of his employment.  Turning to whether this belief was objectively reasonable, a court should consider the allegedly discriminatory conduct's "frequency; its severity; whether it is physically threatening or humiliating […] and whether it unreasonably interferes with an employee's work performance."  Id. at 808–809.  While

14

Case No. 8:13-CV-1577-T-17TBM

this consideration is typically undertaken at summary judgment, accepting as true and construing the facts in the light most favorable to the non-moving party, Local 547's treatment of Plaintiff easily rises to the level severe and pervasive—among other actions, Local 547 cast Plaintiff as a criminal; Local 547 denied Plaintiff meaningful discovery to defend against criminal allegations; Local 547 dishonored Plaintiff's checks; Local 547 stigmatized Plaintiff's reputation to a local bank; and Local 547 removed Plaintiff from his elected office. (Doc. # 11).

Accordingly, it is **ORDERED** that:

1. Plaintiff's causes of action for color-based discrimination and hostile work environment are **DISMISSED** for failure to exhaust administrative remedies;

2. The remainder of Defendant's Motion to Dismiss Plaintiff's Amended Complaint is **DENIED**.

3. The Defendant is **ORDERED** to reply to the Plaintiff's Amended Complaint within fifteen (15) days of this Order.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 10th day of September, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:    All Counsel and Parties of Record